48t6cria

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  -------------------------------x

3  KEVIN DAMION CRICHLOW,

4           Plaintiff,

5           v.                          07 CV 3222(RPP)

6  NEW YORK CITY DEPARTMENT OF
   CORRECTIONS, et al.,
7
                                     **MEMO ENDORSED**
   Defendants.
8
   -------------------------------x
9                                      New York, N.Y.
                                       March 29, 2008
10                                     12:00 a.m.

11 Before:

12              HON. ROBERT P. PATTERSON, JR.,

13                                      District Judge

14                    APPEARANCES

15 STROOCK & STROOCK & LAVAN
        Attorneys for Plaintiff
16 BY:  JAMES LAWRENCE BERNARD
        MICHELLE SCHOTT
17
   MICHAEL A. CARDOZO, Corporation Counsel
18 for the City of New York
        Attorney for Defendants
19 BY:  DEBORAH ALYSE DORFMAN

20

21  *The motion of Defendants to dismiss*
    *the amended complaint is denied for the reasons*
22  *set forth in this Transcript.*

23                              *So ordered.*

24                              *Robert P. Patterson*

25                              *5/2/08*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED  5/2/08

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

48t6cria

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    KEVIN DAMION CRICHLOW,

4                   Plaintiff,

5         v.                              07 CV 3222(RPP)

6    NEW YORK CITY DEPARTMENT OF
     CORRECTIONS, et al.,
7
                  Defendants.
8
     ------------------------------x
9                                        New York, N.Y.
                                         March 29, 2008
10                                       12:00 a.m.

11   Before:

12                 HON. ROBERT P. PATTERSON, JR.,

13                                       District Judge

14                            APPEARANCES

15   STROOCK & STROOCK & LAVAN
          Attorneys for Plaintiff
16   BY:  JAMES LAWRENCE BERNARD
          MICHELLE SCHOTT
17
     MICHAEL A. CARDOZO, Corporation Counsel
18   for the City of New York
          Attorney for Defendants
19   BY:  DEBORAH ALYSE DORFMAN

20

21

22

23

24

25

1    (Case called; in open court)

2    . THE COURT:  Ms. Dorfman, I guess it is your motion.

3    MS. DORFMAN:  Thank you, your Honor.  May it please

4    the Court, my name is Deborah Dorfman.  I represent the City

5    defendants in this matter.  We are here on the defendant's

6    motion to dismiss the complaint in its entirely.

7    Essentially as I have discussed in my papers, and also

8    I would like to discuss further today, the complaint is really

9    about, for the most part, uncomfortable conditions at Rikers

10   Island, namely, three different facilities at which the

11   plaintiff was during his confinement -- the OBCC, the EMTC, and

12   the GRVC.  Those are just acronyms for different facilities on

13   Rikers Island.

14   THE COURT:  There is a fourth one in there, too?

15   MS. DORFMAN:  Not to my knowledge, your Honor.  He has

16   three.

17   MS. SCHOTT:  It is three, your Honor.  He is currently

18   in a fourth facility on Rikers Island, but that is not part of

19   the complaint.

20   THE COURT:  Which one is not part of the complaint?

21   MS. SCHOTT:  The Anna M. Cross Center is not part of

22   the complaint.

23   THE COURT:  I thought he was in the Taylor --

24   something Taylor.

25   MS. SCHOTT:  Yes.  During his entire period of

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

48t6cria

1    incarceration he has been transferred between four different.

2              THE COURT:   Taylor, George R. Vierno.

3              MS. SCHOTT:   And the Otis Bantum Correctional Center.

4              THE COURT:   And then the A.M. Casey, but that is not

5    part of it.

6              MS. SCHOTT:   That's right.

7              THE COURT:   So his present conditions of confinement

8    are not part of the lawsuit?

9              MS. SCHOTT:   No.   At this time there has been no

10   allegations concerning that facility.

11             THE COURT:   All right.

12             MS. DORFMAN:   To my knowledge plaintiff only seeks an

13   award of compensatory damages, and according to his reply

14   papers apparently nominal damages as well, but no claims for

15   injunctive relief.

16             As I was saying essentially this is about

17   uncomfortable conditions of care while at the these three

18   different facilities all of which are operated by different

19   wardens as alleged in the complaint.

20             There are several other complaints that plaintiff has

21   made.   They don't really necessarily relate to conditions of

22   confinement per se and that is related to two assaults that he

23   alleges that he suffered as a result of inmate violence and one

24   claim of inadequate medical care.

25             For the reasons that were discussed in my papers and

1    that I would like to discuss today, none of these claims rise

2    to the level of constitutional violation of which relief can be

3    granted because none of these claims assert facts that meet the

4    deliberate indifference test which is required for Eighth

5    Amendment complains, which these are.

6            Mr. Crichlow is a convicted prisoner.  He was

7    convicted throughout this entire time so therefore the Eighth

8    Amendment is the only applicable constitutional amendment here.

9    Although, the plaintiffs have referenced the Fourteenth

10   Amendment, the Fourteenth Amendment does not apply.

11           The deliberate indifference standard, the plaintiff

12   has to allege facts sufficient to show two parts of that, which

13   are: One, an objective standard that the depravation was

14   sufficiently serious; and/or that there was a substantial risk

15   of harm that he has been placed in; and that the sufficiently

16   serious -- to show that the violation was sufficiently serious,

17   the depravation has to really result in minimal -- in a denial

18   of minimal civilized measures of life's necessities.

19           In addition, the second prong is that plaintiff must

20   allege facts sufficient to show a sufficiently culpable state

21   of mind on the part of the defendant.  It is not sufficient to

22   show that an official's general knowledge of conditions at a

23   facility constitute deliberate inference, rather there has to

24   be knowledge of a specific risk of harm to the individual who

25   is bringing the claim.

48t6cria

1           In that light I would like to examine the plaintiff's

2    claims.  I realize there are numerous claims, numerous factual

3    claims, and there are many different ways to look at these

4    claims.  I think the most effective way to really look at them

5    in an efficient manner given time constraints today is to

6    really go facility by facility.  I would like to look at these

7    claims in terms of while he was at the OBCC, while he was at

8    the EMTC, and also while he was at the GRVC.

9           I would like to start with the OBCC.  Mr. Crichlow was

10    there for a total of approximately 16 days from February 1 to

11    February 16th, 2007.  During which time Mr. Crichlow alleges a

12    variety of conditions, complaints.  He alleges that he was

13    subjected to living in a dorm area with beds that were too

14    close to each other.  It should be noted, however, that those

15    allegations were for a -- he was in that area with the dorm

16    with the close beds for approximately seven days out of the

17    approximately 16 days that he was at the OBCC.  So he then

18    alleges he was moved to a cell area and doesn't allege that his

19    beds were close to other inmates during that time period.  So

20    we are talking about only seven days at the OBCC during which

21    he is alledged he had to live in a crowded living area without

22    privacy and with his bed being too close to other inmates.

23           THE COURT:  Six inches is what he said.

24           MS. DORFMAN:  That is correct, your Honor.  He also

25    alleges that the bed space was in violation of the BOC's

1    minimal standard.  However, if one looks at minimal standards,

2    the minimal and standards don't really discuss -- first,

3    minimal standards are not enforceable in federal court and also

4    he complains that there were -- I believe he complains there

5    were 50 inmates in this dorm area.  If you look at *Benjamin v.*

6    *Frasier*, the Second Circuit specifically said that the way that

7    plaintiffs are presenting the overcrowding in this context is

8    not necessarily unconstitutional.  More has to be shown.

9    Furthermore, the minimal standards don't disallow 50 inmates in

10   a living area, particularly if they are convicted.  Actually,

11   the minimal standard allow for 60 inmates in an open-dorm area.

12          THE COURT:  He is not a convicted inmate is he?

13          MS. DORFMAN:  He was, yes.  The entire time he was a

14   convicted inmate.  That is why I was saying the Eighth

15   Amendment is the only amendment applicable here, not the

16   Fourteenth Amendment.

17          So the whole time, even when he was at OBCC, the fact

18   that he was in an area with 50 other inmates really doesn't

19   violate the minimal standards.  And even if it did, the minimal

20   standards don't necessarily rise to the level of a

21   constitutional violation, and I refer to Court to *Benjamin v.*

22   *Frasier*.

23          Furthermore, while he was at the OBCC --

24          THE COURT:  Benjamin v.?

25          MS. DORFMAN:  Frasier.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

48t6cria

1           THE COURT:  *Benjamin v. Frasier.*

2           MS. DORFMAN:  I can provide the Court with the

3    citation if you would like.  That is at 343 F.3d.

4           THE COURT:  Is it dealing with the same space?

5           MS. DORFMAN:  *Benjamin v. Frasier* was actually about

6    pretrial detainees at Rikers Island as well.  So although it

7    may not --

8           THE COURT:  All those dormitories are all different

9    over there.

10          MS. DORFMAN:  That --

11          THE COURT:  My recollection.

12          MS. DORFMAN:  That is correct.  The ruling in *Benjamin*

13   was that there was not a constitutional right to a particular

14   amount of bed space.  And the minimal standards that talk about

15   how much bed space should be allowed for inmates and how many

16   inmates should be in the living area, the minimum standards --

17   they are published by the Board of Corrections.  They don't

18   differentiate from facility to facility.  Rather, they

19   differentiate between a pretrial detainee and a sentenced

20   inmate.

21          So in the minimal standards, which are attached to my

22   motion, it sets forth that 50 inmates can be placed who are

23   pretrial in the dormitory areas and up to 60 inmates will be

24   allowed for sentenced inmates.  So there is no differentiation.

25          Now, whether or not it is a constitutional violation,

1   other factors have to be considered.

2   THE COURT: The U.N. regulations call for certain

3   amount of space per square feet per inmate, don't they?

4   MS. DORFMAN: They do, your Honor. As far as I know,

5   there is a split in the Supreme Court as to whether or not

6   those regulations would be applicable here. I know that the

7   United States has actually not signed off to the most recent

8   charter of the U.N.

9   THE COURT: I am sorry?

10   MS. DORFMAN: The U.S. has not ratified the most

11   recent charter to the U.N. and there is a split in the Supreme

12   Court as to whether international standards would be applied

13   Nationally to the United States.

14   THE COURT: What do you mean by a split in the Supreme

15   Court?

16   MS. DORFMAN: I should say there is a five to four as

17   far as I am aware.

18   THE COURT: It came down one way or another.

19   MS. DORFMAN: In favor of looking at international

20   standards. However, I would just note that the United States

21   has not ratified the most recent U.N. charter as other

22   countries have. So don't know specifically if the bed space

23   allotment is something within that charter that the United

24   States would accept as controlling law here. I am not sure if

25   that has been litigated.

1       THE COURT: What is the case in the Supreme Court.

2       MS. DORFMAN: I don't remember off the top of my head.

3   I was just talking about it this Saturday, but I apologize.

4       Nevertheless, even if let's say that these standards

5   violated the U.N. standards, even if that were the case, he was

6   there for seven days. The case law in this jurisdiction is

7   that, and also in the *Wilson* case from the Supreme Court, for a

8   short period of time living in such conditions just does not

9   rise to a level of a constitutional violation.

10      So we are talking about seven days during which

11  Mr. Crichlow at the OBCC was placed in this dorm area. In his

12  complaint he talks about that he was there from the first of

13  February until he was moved to a cell area on or about February

14  7th, which is at paragraph 20 in his complaint.

15      So he wouldn't be able to sufficiently state facts to

16  support a finding of sufficiently serious depravation under the

17  first prong of the deliberate indifference test.

18      Mr. Crichlow also in his other allegations --

19      THE COURT: Did any of these cases that relie on were

20  they summary judgment cases or were they partially dismissed

21  cases?

22      MS. DORFMAN: If you give me a moment, your Honor.

23      THE COURT: *Benjamin v. Frasier*?

24      MS. DORFMAN: That was not a motion to dismiss.

25      THE COURT: It was a summary judgment case?

1       MS. DORFMAN:  Actually, *Benjamin* is a long, litigated

2    case that comes out of my office.  It is if front of Judge Baer

3    and it is still in front of Judge Baer on certain issues.

4       THE COURT:  If it goes back to the original *Benjamin*

5    case then that has been hanging around for 30 years.

6       MS. DORFMAN:  I believe so.  I have only been at the

7    Corporation Counsel for almost a year, your Honor.  I don't

8    know the history of *Benjamin* except I do know that from

9    speaking with my colleagues, particularly Mr. Orsen who handles

10   that case, that it has been around for sometime and it has gone

11   up to the Second Circuit at least twice.  So it is not a motion

12   for summary judgment.

13       THE COURT:  Whose case is it?

14       MS. DORFMAN:  As far as I know it is in front of Judge

15   Baer.

16       THE COURT:  He got it from Lester.

17       MS. DORFMAN:  I don't know the original history of it.

18       I guess the point I would like to make in regard to

19   the OBCC claims, because there are many of them and I realize

20   that the Court has limited time with counsel today, that we are

21   talking about again a period of a total of approximately 16

22   days at which he was at OBCC and whether or not there can be a

23   dispute in what the conditions were like.  The fact is that

24   there is no dispute and he has alleged that he has been there

25   for 16 days.  So any of those conditions at the OBCC were

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1     temporary and really don't rise to the level of a

2     constitutional violation at the end of the day.

3         Also, I think it is important to note that plaintiff

4     did not allege any physical injuries as a result of being

5     placed at the OBCC. Even though he states that he was

6     inappropriately placed and there was a risk of violence because

7     that was apparently allegedly a placement for gang members, he

8     does not allege that he suffered any harm whatever in terms of

9     an assault or any physical injury as a result of being placed

10     at the OBCC.

11         So therefore as far as his compensatory claims go, in

12     terms of his placement at the OBCC and any claims at the OBCC,

13     those would be barred by the Prison Reform Litigation Act. So

14     that leaves him only with the possibility of seeking nominal

15     damages. However, going back to my original point, which is

16     that these claims here at the OBCC because they are not

17     sufficiently seriously temporary in nature and all the other

18     reasons stated in my papers, do not amount to a constitutional

19     violation and thus nominal damages should not be available to

20     him and any claims against Warden Hauerhane, who is the warden

21     of OBCC, and any claims in regard to the OBCC should be

22     dismissed on those ground.

23         THE COURT: I didn't remember that the was a

24     dormitory. I thought they were all individual cells and I

25     thought they were all for prisoners who acted out, disciplinary

1    problems.  I thought it was for people who had disciplinary

2    problems and fights and things of that sort that were placed in

3    those.  Times have changed.

4               MS. DORFMAN:  If I may, your Honor, I would like to

5    now talk about the claims at the GRVC.

6               THE COURT:  All right.

7               MS. DORFMAN:  I would like to talk about those because

8    they are relatively short.  Essentially, Mr. Crichlow makes --

9    he was only there from August 25th to August 10th, 2007.  So,

10   again, we are talking about a very small period of time.

11   Warden Shaw is the warden who was the warden at the time and

12   who is the defendant who is alleged to have been in charge of

13   the GRVC in plaintiff's complaint.

14               The claims that he raises are that he was not allowed

15   to go to the law library.  Although, he doesn't claim that he

16   didn't have access to the law library materials.  He alleged

17   that he was not able to do his laundry during the approximately

18   16 or 17 days that he was at the GRVC.  He was allowed to have

19   four showers.  His final claim was for the last three days of

20   his confinement, the lights broke in his cell and nobody fixed

21   them so he sat in darkness for three days.

22               I think -- again, the first point I would like to make

23   is that the placement at GRVC was a relatively short period of

24   time.  It was approximately 16 or 17 days and so the conditions

25   that he suffered during that period of time are just not

1   sufficiently serious, whether you look at them in their

2   totality or you look at them individually, to arise to the

3   level of a constitutional violation.

4        Furthermore, in regards to his claim about not going

5   to the law library, not only does he allege he wasn't able to

6   have access to law library materials, he makes no allegations

7   that he wasn't able to work on -- able to file and prosecute a

8   case.  Whether it be a case about his conditions, obviously he

9   was able to file this case because went pro se originally.  He

10  makes no allegations that his criminal case was in any way

11  impaired, that he was denied inability to file an appeal or

12  have access to materials to address in the other legal matter

13  while in the GRVC.

14        That is a requirement under *Luis v. Casey*.  The United

15  States Supreme Court clearly stated that that has to be one of

16  the elements in order to have standing to bring a claim for

17  inadequate access to a law library.  Those allegations are just

18  not here.  So his claim in regards to the law library should be

19  denied.

20        Again, the other conditions that he suffered were for

21  a relatively short period of time.  He also makes no allegation

22  that he suffered any physical harm and thus his claims for

23  compensatory damages at the GRVC should be denied because they

24  are barred by the Prison Reform Litigation Act.  That would

25  leave him with only nominal damages.  However, as I have stated

48t6cria

1   because he has not made a claim for constitutional violations

2   and not stated facts sufficient to bring a claim for those, any

3   claims for nominal damages should also be dismissed as they

4   apply to the GRVC.

5          I would also note that -- I respectfully refer the

6   Court to Count One and Two of the complaint -- no where in

7   Counts One or Two does the plaintiff reference the policies and

8   practices in regards to the to GRVC.  The only reference to the

9   OBCC and EMTC, specifically in Count One paragraph 51, the

10  allegation of the defendants' policy, practices, acts and

11  omissions with respect to overcrowding at OBCC and EMTC

12  deprived the plaintiff of adequate shelter, reasonable safety,

13  basic human needs, and placed Mr. Crichlow at unreasonable risk

14  or increased violence, illness, mental suffering and

15  deteriorating health.

16         There is no reference to the GRVC in this paragraph,

17  and if the Court looks at the rest of the sections, there is a

18  general discussion of the defendants' knowing of these

19  conditions, but this count really does not, when you look at it

20  as a hole, appear to the GRVC.  Similarly, the claim against

21  the City of New York references in paragraph 57 again just the

22  conditions of OBCC and the EMTC is not at GRVC.

23         So in sum I would argue that any claims against Warden

24  Shaw who runs the GRVC and any claims that relate to the GRVC

25  should be dismissed for failure to state a claim and also lack

1    of standing because plaintiff does not have standing to bring a

2    law library claim.

3        Now I would like finally to move to the EMTC if that

4    would be all right with your Honor.  I would like to talk about

5    the EMTC in several portions.  First discussing the overall

6    general conditions of confinement and then specifically talk

7    about the assaults and the medical care.  Because the alleged

8    assaults were alleged to have occurred at EMTC not at the other

9    two facilities.  Similarly, the alleged inadequate medical care

10    also is alleged only to have occurred at the EMTC not at any of

11    the other facilities.

12        Just starting with the conditions of confinement,

13    again, it is defendants' position that essentially plaintiff is

14    complaining of uncomfortable conditions.  Unfortunately, that

15    is the nature of jails and prisons.  They are not comfortable.

16    They are not pleasant places.  Again, Mr. Crichlow complain

17    about bed space in the EMTC.  He was not in the dormitory the

18    entire time.  He was at the EMTC for two and a half months    .

19    according to the complaint and he was in a dormitory area where

20    he alleges the beds were too close together not the entire

21    time.  He alleges the rest of the time he was in fact placed in

22    a cell.  He was in the EMTC for a total of approximately six

23    and a half months when you exclude the period of time that he

24    left at the end of July and beginning of August to go to the

25    GRVC.

48t6cria

1    He has a number of conditions, complaints that he

2    didn't always get the toiletries that he needed, the laundry

3    service was not always provide, that he didn't get regular

4    exercise, recreation or access to an indoor gym and sometimes

5    he was not able to be transported into religious services

6    because there was not enough staff.

7    In regard to the religious services, the issue of

8    transporting inmates to religious service was actually dealt

9    with in a case called the *Mohammed* case and if you excuse me

10    for one moment I will get that citation.

11    THE COURT:  Don't those claims have to be adjudged by

12    the totality of the circumstances?

13    MS. DORFMAN:  Well, your Honor, I would argue that not

14    all conditions as they relate to conditions of confinement

15    actually do have to be analyzed in the totality of the

16    circumstances.  Rather, I think some are.  Those that really

17    rise to the level of a denial of a right that really violates

18    life's minimal standard of decency.

19    THE COURT:  What is your authority?

20    MS. DORFMAN:  Actually, there are a number of cases

21    that have held this.

22    THE COURT:  I have to hear from the defense here very

23    shortly.  You are cutting into their time so please give them

24    to me.

25    MS. DORFMAN:  There is *Jones vs. Goord,* 190 F.R.D. 103

48t6cria

1    (S.D.N.Y. 1999).  *Waldo v. Goord*.  That is at 1998 U.S. Dist.

2    LEXIS 15956 (N.D.N.Y 1998).  *Bickers v. Vaughn*, 1997 U.S. Dist.

3    LEXIS 1467.

4            THE COURT:  Are you reading from the papers?

5            MS. DORFMAN:  I apologize, your Honor.  Yes, it is

6    page 2 of my reply brief.  I list all of the those cases in the

7    first paragraph and distinguish the cases that the plaintiffs

8    have cited so all the citations can be found there.

9            THE COURT:  Let me hear from the defendants.

10           MR. BERNARD:  Good morning, your Honor.  James Bernard

11   from Stroock & Strook & Lavan on behalf of the plaintiff.

12           With the Court's permission, Ms. Schott, my colleague

13   from our office will present the oral argument.  This is

14   Ms. Rosenberg in the back.

15           THE COURT:  Very good.

16           MS. SCHOTT:  Thank you for hearing us this morning,

17   your Honor.  In the matter efficiency, I would like to dive

18   right in and address what I think is the central point of

19   disagreements of the parties and I think your Honor already

20   seized upon it when asking Ms. Dorfman shouldn't these

21   allegations be reviewed under the totality of circumstances

22   standard.  That is plaintiff's position.  Defendants' piecemeal

23   analysis marginalizes the claims that Mr. Crichlow has brought.

24           This is not a case about uncomfortable conditions.

25   This is a case about unsafe conditions at Rikers Island.  And

48t6cria

1    the allegations concerning the three facilities at issue here

2    show that there are in addition to overcrowding a lack of

3    resources, staff is stretched thin.  This leads to routine

4    depravations that lead to increased aggression and increased

5    risk of violence.  In Mr. Crichlow's case, that increased risk

6    of violence became a reality when he was assaulted twice in a

7    three-month period and we cannot make light of those facts.

8              THE COURT:  That was at the MDC?

9              MS. SCHOTT:  Correct, your Honor.

10              THE COURT:  Why should those GRVC allegations bear on

11    overcrowding at the MDC?

12              MS. SCHOTT:  Well, I think, your Honor, that is a good

13    question.  Unlike the case that city has cited analyzing two

14    separate facilities on their own basis, Rikers should be

15    treated differently.  As Mr. Crichlow's experience shows,

16    inmates are often transferred from housing facility to housing

17    facility and really it is one big complex.  And it shouldn't be

18    treated any different than a jail which is housed in one

19    building and inmates move from wing to wing.

20              I think the allegations here show that overall there

21    is a systemic problem at Rikers with overcrowding and these

22    conditions that lead to exactly the type of environment which

23    led to Mr. Crichlow's injuries.  These were very serious

24    injuries.

25              Ms. Dorfman has minimalized them and suggested that he

48t6cria

1    hasn't alleged sufficient physical injury to seek compensatory

2    damages here. His face was shattered. He was brutally

3    attacked by an inmate with a scrub brushed. He was so brutally

4    attached that they had to put him in solitary confinement

5    because his face was in such a fragile state following the

6    assault. That was following an earlier incident three months

7    earlier where he was assaulted when speaking out on behalf of

8    another inmate involved in a dispute over food.

9         These are the types of incidents when inmates are

10   forced to share tight common spaces, eat in areas where they

11   don't all have space to sit. People have lack of basic hygiene

12   items. This all leads to a very tense environment. I think on

13   reply defendants have not come back with any cases that would

14   take away from Mr. Crichlow's claim.

15        The authorities that Ms. Dorfman has referred to *Jones*

16   *v. Goord* is actually a motion to dismiss case where the Court

17   says, At this stage I have to view the totality of the

18   circumstances and give the plaintiff the benefit of the doubt.

19   In *Bickers* the claim I believe was that the inmates were in

20   cold, damp cells and contracted sore threats. Clearly we are

21   talking about more serious claims of injury here arising from

22   the cumulative effect of all of these conditions.

23        The U.S. Supreme Court case *Wilson v. Seiter* says you

24   can take conditions in combination which standing alone would

25   not be enough to give rise to constitutional violation and

48t6cria

1   consider them in their totality.  When they all go to the same

2   basic depravation, the same basic need that rises to a level of

3   a constitutional violation.  Here all of these things are going

4   to personal safety.

5          THE COURT:  How do the conditions in the Otis Bantum

6   affect the conditions in the EMTC?

7          MS. SCHOTT:  I would submit that like in

8   Mr. Crichlow's case inmates are moving about freely through

9   these facilities, they are being transferred.  The defendant

10  shouldn't be able to raise as a defense, Oh, this inmate was

11  only in my facility for 16 days when it is really the same

12  conditions throughout which are creating this environment that

13  leads to these assaults.

14         THE COURT:  How do they affect him at the Otis Bantum?

15  What is the carryover between Otis Bantum and EMTC.

16         MS. SCHOTT:  Well, just like he moved from OBCC to

17  EMTC, there are other inmates moving from OBCC presumably.  He

18  didn't any change in his status.  I don't know the reason for

19  his being transferred.  Presumably other inmates are being

20  transferred just like him.  I think it should be viewed more

21  like in the same building.  There shouldn't be a reason for

22  viewing them any differently.  It is all part of one complex at

23  Rikers Island.

24         When you have these conditions across the board, it

25  shouldn't be a defense that, Oh, well, after 16 days I moved

1    this inmate, therefore, you can't come after me.  When it seems

2    that the evidence suggests that there is a municipal policy

3    there of tolerating this sort of overcrowding and this

4    shorthanding of staff and undermonitoring of conditions and

5    shortages of basic necessities, that tolerance they shouldn't

6    be able to raise that as a defense that they can just move

7    around inmates to avoid liability.

8        THE COURT:  In other words, you are saying that the

9    depravation of Otis Bantum all contribute to the tension within

10   the entire institution when people are transferred to the next

11   institution and have the same deprivations that they are more

12   likely to get into fights and get the physical attacks?

13       MS. SCHOTT:  That's correct.

14       THE COURT:  I suppose you might be able to get an

15   expert to testify on that.

16       MS. SCHOTT:  I would like to take the opportunity to

17   answer some questions that came up.  You asked earlier about

18   *Benjamin v. Frasier*.  That was actually a case where a consent

19   decree had been put into place.  So for a very long period the

20   parties had agreed that the conditions there were

21   unconstitutional.  Then what happened after the PLRA was

22   enacted, defendants moved to vacate the consent decree so there

23   was litigation over that.  Those procedural issues are not

24   germane here; but as your Honor correctly pointed out, many of

25   the cases that the defendants have relied upon are summary

48t6cria

1    judgment cases or cases where there were even trials.   And we

2    would submit that plaintiff has made a sufficient showing of

3    receipt and had discovery and be offered the opportunity to

4    prove up his case.

5         If your Honor has no further questions, I will turn it

6    over.

7         THE COURT:   No, thank you.

8         MS. DORFMAN:   Your Honor, may I take a few moments to

9    reply to a couple of the points?

10        THE COURT:   Just rebuttal.   Short rebuttal.   Make it

11   very short.

12        MS. DORFMAN:   Thank you.

13        The first, I guess, the main thing I want to reply to

14   is the plaintiff's notion that the OBCC and the EMTC and GRVC

15   should all be treated as one jail.   Here plaintiffs have made

16   allegations and in fact named as defendants different wardens

17   of the different facilities.   So we have Warden Shaw at GRVC,

18   Warden Hauerhane at OBCC, and then the wardens of EMTC.

19        THE COURT:   And Mr. Horn.

20        MS. DORFMAN:   And Mr. Horn.

21        They have been named in his individual capacities as

22   well as in their official capacities.   In order to state a

23   claim for 1993 violations, there has to be some either personal

24   involvement alleged or there has to be some reasonable facts

25   alleged that would show that they would have knowledge or as

48t6cria

1    the plaintiffs have alleged they would have constructive

2    knowledge about the conditions.

3          Here the plaintiffs also allege that these wardens are

4    specifically responsible for their own facilities not for each

5    other's facilities.  So I would again ask that the claims

6    for -- that the whole complaint be dismissed on the basis of

7    all of my argument but also just highlight that in terms of the

8    claims against OBCC and Warden Hauerhane that those should be

9    in fact treated separately from EMTC and GRVC and the like for

10   the rest of them.

11         The other point that I just want to make is that in

12   terms of the assaults, I want to first of all clarify that in a

13   pleading error  -- in a typo I was not saying that those

14   physical injuries were not the kind that were barred by the

15   PLRA.  I was saying the rest of his injuries.  I just wanted to

16   clarify that.

17         I would also like to say that I still don't believe

18   that he has met the pleading requirements for constitutional

19   violations to show that the assaults were constitutional

20   violations.  In the instant of the first assault, he admits

21   that he put himself into that position there and that in order

22   to be able to show liability there has to be a showing that

23   there was a specific knowledge of a specific risk in order to

24   show personal liability and to show that there was a policy or

25   procedure.  This isn't sufficient to just say that the wardens

1       and Mr. Horn should have been aware of general conditions.

2               The second assault, I don't believe that the

3       plaintiffs can show deliberate indifference because after he

4       was assaulted, he was as they claim put into protective custody

5       to protect him. So they took steps to protect him from any

6       further harm.

7               Thank you, your Honor.

8               THE COURT: I am going to deny the motion to dismiss

9       and I may do so because I think it is possible that the

10      plaintiffs could prove the conditions in one of the

11      institutions could affect the general attitude and danger -- to

12      the dangerous situation which prisoners could be subjected to

13      in the prison. People's attitudes are built up over a period

14      of time, they are built up by depravations unfortunately of

15      small things as well as large things. So it is a matter of

16      cumulative effect and I think the Court has to look at the

17      totality of the circumstances to determine whether that

18      cumulative effect applies in this case. So the motion is

19      denied.

20              Parties will proceed to discovery.

21              Have you agreed on a discovery schedule?

22              MS. SCHOTT: We have not.

23              THE COURT: Will you submit a discovery schedule for

24      the Court in the next two weeks.

25              MR. BERNARD: Yes, we will do so. We will talk to

48t6cria

1    Ms. Dorfman's office.

2              THE COURT:  The other cases are in the course of

3    settlement?

4              MS. SCHOTT:  The matters have been resolved.

5              THE COURT:  They have been?  I haven't gotten a

6    stipulation.

7              MS. SCHOTT:  We are still processing the paperwork,

8    but we don't expect any difficulties with that following

9    through.

10             THE COURT:  Can we do that in the next two weeks?

11             MS. DORFMAN:  Your Honor, the City can certainly

12   submit a stipulation at any time.  The paperwork I can't

13   guarantee that the plaintiffs will have their checks in two

14   weeks.  There is a certain process.

15             THE COURT:  I am a volunteer in this matter so I

16   recognize that I have to do volunteer service from time to time

17   but these are Judge Hellerstein's cases.  Maybe they were

18   someone else's before that.  I would like to clear out the

19   docket as soon as I can so if you can do it in the next couple

20   weeks, I would appreciate it.

21             MS. DORFMAN:  Thank you.

22             MS. SCHOTT:  Thank you, your Honor.

23                            o0o

24

25